**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**360HEROS, INC.**, *a Delaware Corporation*,

                                        **Plaintiff,**
    **vs.**                                                                  **5:17-cv-549**
                                                                    **(MAD/DEP)**
**MAINSTREET AMERICA ASSURANCE**
**COMPANY**, *a Florida Corporation*,

                                        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **GAUNTLETT & ASSOCIATES** | **DAVID A. GAUNTLETT, ESQ.** |
| 18400 Von Karman Avenue, Suite 300 | **JAMES A. LOWE, ESQ.** |
| Irvine, California 92612 | |
| Attorneys for Plaintiff | |
| | |
| **HANCOCK & ESTABROOK, LLP** | **JAMES P. YOUNGS, ESQ.** |
| 1500 AXA Tower I | |
| 100 Madison Street | |
| Syracuse, New York 13202 | |
| Attorneys for Plaintiff | |
| | |
| **KENNEY SHELTON LIPTAK NOWAK LLP** | **JESSICA L. FOSCOLO, ESQ.** |
| 233 Franklin Street | **TIMOTHY E. DELAHUNT, ESQ.** |
| Buffalo, New York 14202 | **ASHLYN M. CAPOTE, ESQ.** |
| Attorneys for Defendant | |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff 360Heros, Inc. ("360Heros") commenced this action on May 18, 2017, seeking

declaratory relief and damages for Defendant Mainstreet America Assurance Company's

("MSA") alleged breach of contract based on its "failure and refusal to pay policy benefits and to

defendant 360Heros in an underlying copyright[,] trademark and patent . . . lawsuit venued in the

United States District Court for the Northern District of California, styled as *GoPro, Inc. v. 360Heros*, Case No. 16-cv-01944 (the '*GoPro Action*')."  That same day, 360Heros moved for preliminary injunctive relief.  *See* Dkt. No. 2.

After the motion was fully briefed, the parties indicated that they were working towards a settlement of this matter.  Magistrate Judge Peebles held a settlement conference on August 21, 2017 and indicated that, while the matter did not settle, the parties were close to resolving this case.  Thereafter, the parties requested several adjournments to continue negotiating towards settlement.  *See* Dkt. No. 36.  In a joint status report dated December 1, 2017, the parties indicated that they "have reached an agreement, being circulated to principals, providing for a stipulated dismissal of this lawsuit without further Court conferences.  The parties expect to file such a stipulation no later than December 18, 2017."  Dkt. No. 38.  However, during a December 11, 2017 telephone conference, Magistrate Judge Peebles noted it is clear that, despite representations made by counsel, this case is not settled and is headed to District Judge Mae A. D'Agostino to proceed with this litigation."  As a result of the December 11, 2017 telephone conference, the Court instructed the parties to supplement the pending motion for injunctive relief and the response thereto.

Currently before the Court is 360Hero's motion for a preliminary injunction.  *See* Dkt. No. 2.

## II. BACKGROUND

### A.    The Parties

Plaintiff 360Heros, Inc. manufactures, sells, and distributes photographic harness products in the United States and worldwide, including New York.  *See* Dkt. No. 18 at ¶ 1.  360Heros is a Delaware corporation with its principal place of business in Olean, New York.  *See id.* at ¶ 2.

Defendant MSA is in the business of selling contracts of insurance. *See id.* at ¶ 4. MSA is a

Florida corporation with its principal place of business in Jacksonville, Florida. *See id.* at ¶ 5.

**B.    The MSA Policy**

CNERD, Inc. was the named insured on MSA Policy No. BP25610B effective 07-01-2013

to 07-01-2014 (the "Policy"). *See* Dkt. No. 18 at ¶ 14. By endorsement, 360Heros was added as

a named insured effective 07-01-2013 to 07-01-2016. *See id.* CNERD and 360Heros were also

insureds on the MSA policy effective 07-01-2014 to 07-01-2015, and on the policy effective

07-01-2015 to 07-01-2016. *See id.*

Pursuant to the Policy, MSA had limits of insurance of $1,000,000 per occurrence,

$1,000,000 personal and advertising injury limit, and $2,000,000 in the aggregate. *See id.* at ¶ 15.

The Policy provides coverage for "personal and advertising injury" caused by an offense

committed during the policy period. *See id.* at ¶ 16. The Policy provides for a defense of suits

that potentially seek damages caused by "personal and advertising injury." *Id.* at ¶ 17.

Specifically, the Policy provides, in pertinent part, that MSA "will pay those sums that the insured

becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or

'personal and advertising injury' to which this insurance applies. We will have the right and duty

to defend the insured against any 'suit' seeking those damages[.]" Dkt. No. 18 at ¶ 18. The Policy

defines "advertisement" as "a notice that is … published to the general public or specific market

segments about your goods, products or services for the purpose of attracting customers or

supporters. For the purposes of this definition: **a.** Notices that are published include material

placed on the Internet or on similar electronic means of communication; and **b.** Regarding

web-sites, only that part of a web-site that is about your goods, products or services for the

purposes of attracting customers or supporters is considered an advertisement." *Id.*; *see also* Dkt.

No. 1-1 at 64.  Further, the Policy provides that "'[p]ersonal and advertising injury' means injury ... arising out of one or more of the following offenses: . . . Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'"  *Id.*; *see also* Dkt. No. 1-1 at 66.

**C.     The Underlying GoPro Action and Notice to MSA**

On April 13, 2016, GoPro filed a complaint in the Norther District of California, alleging that 360Heros infringed on certain of GoPro's copyrighted images in its advertising, infringed on its HERO and ABYSS trademarks, and otherwise engaged in unfair competition.  *See* Dkt. No. 18 at ¶ 19.  GoPro's complaint further sought a declaratory judgment of non-infringement of 350Heros' U.S. Patent No. 9,152,019 (the "019 patent").  *See id.* at ¶ 20.  GoPro further alleges that it acquired a French company, Kolor SARL, that had been selling the ABYSS rig in the United States previously in 2014.  *See id.* at ¶ 22.

By a letter dated April 22, 2016, counsel for 360Heros provided notice of the lawsuit and a copy of the complaint to MSA.  *See id.* at ¶ 24.  360Heros' counsel gave further notices of the suit's pendency through May and June 2016.  *See id.* at ¶ 25.  In an August 2, 2016 letter, MSA agreed to defend 360 Heros in the *GoPro Action*.  *See id.* at ¶ 26.  MSA subsequently confirmed that its reservation of rights letter created a conflict of interest entitling 360Heros to retain "independent counsel at MSA's expense."  *Id.*; *see also* Dkt. No. 1-3 at 2-9.

After service of the complaint, and following unsuccessful settlement negotiations, Gauntlett & Associates ("G&A") became defense counsel in the *GoPro Action* at agreed rates of compensation, substituting as counsel for Kirkland & Ellis.  *See id.* at ¶ 27.  MSA was aware of and approved of G&A's retention and appearance as defense counsel.  *See id.* at ¶ 28.  On August 22, 2016, G&A filed an answer to the GoPro complaint on 360Heros' behalf.  *See id.* at ¶ 29.  As required under Rule 13(a) of the Federal Rules of Civil Procedure, 360Heros also asserted, among

other things, a compulsory counterclaim alleging that GoPro infringed the '019 patent that was the subject of the claim for declaratory relief against 360Heros.  *See id.*

**D.    MSA's Alleged Breach of its Duty to Defend**

According to the amended complaint, since MSA received notice of the *GoPro Action* and continuing through mediation and active litigation in the Northern District of California, MSA's claims representatives had steadfastly agreed that litigation of all patent issues, including incidental prosecution of 360Heros' compulsory counterclaim, fall within the purview of MSA's defense obligations.  *See* Dkt. No. 18 at ¶ 30.  Throughout the course of the litigation of the *GoPro Action*, G&A promptly invoiced MSA for its fees incurred.  *See id.* at ¶ 31.  With only slight deviations, MSA paid those invoices within thirty (30) days.  *See id.*  MSA paid the first seven G&A defense invoices, with the exception of a small amount because of a disagreement over the proper billing rate for a single attorney for a single month.  *See id.* at ¶ 33.

When 360Heros commenced this action, it alleged that, since MSA's receipt of G&A's April 1, 2017 invoice, MSA has refused, and continues to refuse, to pay any amount of 360Heros' defense costs or legal fees associated with the *GoPro Action*.  *See id.* at ¶ 34.  In total, the amended complaint alleges that MSA failed to pay the April 1 and May 1, 2017 invoices, totaling $298,434.11.  *See id.* at ¶ 35.  Despite G&A's inquiries into the status of payment on the defense costs, MSA has only stated that it is "reviewing" the bills.  *See id.* at ¶ 36.[1]

In response to 360Heros' motion for injunctive relief, MSA indicated that it advised G&A that additional time was required to review the invoices, which include over 120 pages of time entries.  *See* Dkt. No. 15 at 2.  MSA claims that it also "requested documents and information to

---

[1] As discussed below, since the filing of the amended complaint, the parties' positions have significantly changed.

substantiate the bases for the charges, specifically the amount of time spent and whether the charges were related exclusively to 360Heros' prosecution of its counter-complaint. These documents and information were not received by MSA until May 30, 2017 and were in the process of being reviewed and evaluated when MSA became aware that 360Heros filed this motion seeking injunctive relief." *Id.* As such, MSA claims that any delay in payment of the disputed invoices is reasonably explained by MSA's evaluation of the documents provided to justify the reasonableness of the fees charged. *See id.*

## III. DISCUSSION

### A.    Standard of Review

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted). "A decision to grant or deny a preliminary injunction is committed to the discretion of the district court." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994) (citation omitted).

A party seeking a preliminary injunction must establish "'a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party.'" *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 2d 107, 108 (D. Conn. 2005) (quoting *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003)). Moreover, in certain circumstances, an even higher standard applies. "The moving party must make a 'clear' or 'substantial' showing of a likelihood of success where (1) the injunction sought 'will alter, rather than maintain, the status quo' – *i.e.*, is properly characterized as a 'mandatory' rather than 'prohibitory' injunction; or (2) the injunction sought 'will provide the

movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (quoting *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995).[2] "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (internal quotations omitted).

The Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Consonant with this view, the Second Circuit has held that a district court may consider hearsay evidence when deciding whether to grant preliminary injunctive relief. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Therefore, the strict standards for affidavits under the Federal Rules of Evidence and in support of summary judgment under Rule 56(c)(4) of the Federal Rules of Civil Procedure requiring that an affidavit be made on personal knowledge are not expressly applicable to affidavits in support of preliminary injunctions. *See Mullins v. City of New York*, 634 F. Supp. 2d 373, 384 (S.D.N.Y. 2009) (citations omitted). Nevertheless, courts have wide discretion to assess the affidavit's credibility and generally consider affidavits made on information and belief to be insufficient for a preliminary injunction. *See* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2949 (2d ed. 1995); *Mullins*, 634 F. Supp. 2d at 373, 385, 390 n.115 (declining to fully credit the "defendants' hearsay affidavit" and noting that

---

[2] As the Second Circuit has noted, "'[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics,' . . . and that in a close case an injunction can be framed in mandatory or prohibitory terms[.]" *Jolly*, 76 F.3d at 473-74 (internal quotations and citation omitted).

while the court "may consider hearsay evidence in a preliminary injunction hearing . . . , a court may weigh evidence based on whether such evidence would be admissible under the Federal Rules of Evidence").

In the Second Circuit "there is no hard and fast rule . . . that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Maryland Cas. Co. v. Realty Advisory Bd. of Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) (quoting *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 259 (2d Cir. 1989)). "Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute." *Id.*

Even if the plaintiff demonstrates irreparable harm and a likelihood of success on the merits, however, the remedy of preliminary injunctive relief may still be withheld if equity so requires. "An award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weighs the potential benefits and harm to be incurred by the parties from the granting or denying of such relief." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999) (citation omitted).

**B.    Recent Developments**

In its supplemental filing dated January 5, 2018, MSA indicates that, at an August 21, 2017 settlement conference, the parties agreed to resolve the outstanding defense invoices that were pending at that time, *i.e.*, the invoices dated April 1, May 1, June 1, and June 30, 2017. *See* Dkt. No. 41 at 1. MSA indicates that it agreed to pay an additional sum to G&A and that G&A agreed to waive a portion of the disputed defense costs. *See id.* One week after the settlement

8

conference, MSA issued its payment to G&A and, on its January 1, 2018 invoice, G&A issued a credit representing its waived portion of the disputed defense costs. *See id.* Based on these representations, the Court finds that, to the extent that 360Heros' motion relates to these outstanding payments, the issue is now moot.

Additionally, MSA indicates that, at the August 21, 2017 settlement conference, the parties agreed to work out the terms of a defense funding agreement in which MSA would agree to pay 100% of the defense invoices issued by G&A, while reserving its rights to dispute the reasonableness and accuracy of the fees charged after the conclusion of the *GoPro Action. See id.* "Throughout the process of negotiating the defense funding agreement, MSA timely paid Gauntlett & Associates 100% of the invoices billed to MSA for the costs of defending 360Heros subject to its right to seek reimbursement of any amount of the bills that were found to be unreasonable, improper or erroneous after the Underlying Action resolved or concluded. However, after several months of discussions and negotiations, the parties were unable to reach an agreement as to how future fee dispute[s] would be resolved or how any overpayment of fees found to be unreasonable, improper, or incorrect would be refunded to MSA." *Id.* at 2.

MSA indicates that it has acknowledged and accepted its duty to defend 360Heros in the *GoPro Action*, but argues that this "duty obligates MSA to pay *reasonable* attorney's fees and costs incurred with 360Heros defense. It does not obligate MSA to pay attorney's fees or costs that are unreasonable, unnecessary, excessive, or erroneous." *Id.* (emphasis in original). Additionally, MSA contends that "360Heros cannot demonstrate a likelihood of success on the merits entitling it to 100% of all fees and costs billed to MSA, particularly where, as is the case here, the reasonableness of the fees charged are in dispute and the defense invoices subject to this dispute have not been made available to the Court for review. Nor is 360Heros entitled to a

preliminary injunction requiring MSA to pay 100% of all future invoices tendered by 360Heros' defense counsel." *Id.* MSA argues that the reasonableness of any future invoices cannot be determined at this time and it would be improper to compel MSA to pay future invoices without having an opportunity to evaluates the reasonableness of the fees charged. *See id.*

Since the parties were unable to reach a complete agreement as anticipated, MSA indicates that it retained monitoring counsel, Ken Keller, who has over thirty years' experience in California patent and trademark litigation, to oversee the *GoPro Action* and provide context to the defense bills in order to facilitate their review. *See* Dkt. No. 41 at 3. According to MSA, Mr. Keller has reviewed G&A's December 1, 2017 invoice for legal services rendered from November 16, 2017 through November 30, 2017. *See id.* By letter dated December 22, 2017, Mr. Keller advised G&A that, in his opinion, certain fees for this time period are excessive, unreasonable or unwarranted and should be reduced by $24,274.50. *See id.* MSA claims that it has issued a payment to G&A for the December 1, 2017 invoice, less the amount Mr. Keller believed to be excessive and/or unreasonable. *See id.*

Finally, MSA notes that, as of November 2017, it has paid G&A $1,165,712.69 in legal fees and expenses. *See id.* MSA indicates that it will continue to provide a defense to 360Heros in the *GoPro Action* subjected to its previously asserts reservations of rights. *See id.* This duty to defend, however, "does not extend so far as to compel MSA to pay unreasonable and excessive fees billed by Gauntlett & Associates." *Id.* at 3-4.

In its supplement to its motion for injunctive relief, 360Heros acknowledges that, although the parties have been unable to settle this action, "MSA has been regularly paying the full defense invoices in the GoPro suit within 30 days and has generally not contested defense charges until the end of December[.]" Dkt. No. 42 at 3. 360Heros indicates that the December 1, 2017 invoice

was reduced by 26% based on the recommendation of Mr. Keller.  *See id.*  360Heros believes that

the proposed reductions are not justified and responded to the December 22, 2017 letter

explaining the reductions with details explaining the challenged fees.  *See id.*  G&A further

"suggested that monitoring counsel should consider the substantial details about work in the case,

including strategy, pleadings, correspondence, and reports, not merely relying on invoice entries

and suppositions about how much time on which tasks was reasonably required for proper

defense of the insured."  *Id.* at 6.  Finally, 360Heros submits that "[d]uring the course of the

present defense of the GoPro suit, the parties should continue efforts to resolve any disputes about

the reasonableness of defense expenses."  *Id.*

## C.    Application

In the present matter, the Court finds that 360Heros' motion for a preliminary injunction

must be denied.  360Heros relies on *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F.

Supp. 2d 263 (S.D.N.Y. 2012) and *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455

(S.D.N.Y. 2005) in support of its request for a preliminary injunction.  Those cases, however, are

clearly distinguishable from the present matter.

For example, in *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455 (S.D.N.Y.2005), a

member of the board of directors sued several insurers for failure to advance defense costs under

an excess liability policy.  The insurers argued that they relied on false financial statements

provided by the company in its application for insurance, which rendered the policies void *ab

initio*; the insurers also argued that they had effectively rescinded the policies.  The insurers thus

argued that they were not required to advance defense fees for the insureds at all.  The insured, a

defendant in numerous lawsuits, sought an injunction requiring the insurer to reimburse defense

costs *pendente lite*.  After finding that the director was likely to succeed on the merits of his claim

that defense costs were reimbursable, the court held that in a dire situation, where the insured was

receiving no advancement of defense costs, he has suffered irreparable harm.  Specifically, the

court found that

> [i]t is impossible to predict or quantify the impact on a litigant of a
> failure to have adequate representation at this critical stage of
> litigation.  The ability to mount a successful defense requires
> competent and diligent representation.  The impact of an adverse
> judgment will have ramifications beyond the money that will
> necessarily be involved.  There is the damage to reputation, the
> stress of litigation, and the risk of financial ruin – each of which is
> an intangible but very real burden.

*Id.* at 469.  Because of this, the court granted the preliminary injunction.

Similarly, in *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F. Supp. 2d 263

(S.D.N.Y. 2012), the court granted a preliminary injunction requiring an insurance company to

continue advancing defense costs it had stopped paying.  There, the insureds, an investment

advisory company and several of its directors, officers, and employees, sought defense costs

incurred during FBI and SEC investigations and enforcement actions.  The insurer began

advancing defense costs after it received notice of the investigations, but then stopped paying

after a criminal information was unsealed in which a mid-level employee of the investment

advisor had pleaded guilty to securities fraud and conspiracy to commit securities fraud.  The

insurer argued that the mid-level employee's plea colloquy contradicted an answer in the policy

application affirming that no person proposed for insurance was "aware of any fact, circumstance

or situation which might afford valid grounds for any claim such as would fall within the scope of

the proposed insurance."  *Id.* at 268.

The court noted three reasons why – under the particular circumstances before it – the

insurer's complete cutoff of funds caused irreparable harm: (1) it occurred at a critical juncture in

the criminal investigation; (2) the potential securities fraud charges were "by their nature

unusually costly to defend against"; and (3) the insureds could not access its excess layers of insurance without exhaustion of its lower-tiered policy – the very policy on which the insurer had stopped paying. *See id.* at 273-76. Because of these factors, the court found that the need for defense costs was "immediate and concrete, and that in the absence of the requested injunction, the Insureds would suffer irreparable harm." *Id.* at 276. After finding the other requirements for a preliminary injunction met, the court granted the motion.

In the present matter, however, unlike the cases discussed above, MSA has acknowledged its duty to defend and continues to acknowledge this obligation. Moreover, MSA has so far paid defense costs of $1,165,712.69. Further, MSA has agreed to confer with G&A regarding any amounts its claims is unreasonable and will continue to expeditiously process all invoices.

G&A argues that "[t]he Court should grant 360Heros' motion for preliminary injunction to require MSA to pay defense expenses in the underlying GoPro suit by paying defense invoices in full within 30 days. Then the parties should be required to meet and confer to contemporaneously resolve disputes about the reasonableness of defense expenses so that any necessary adjustments in defense activities can be made." Dkt. No. 42 at 7. Basically, G&A is arguing that MSA should pay any amount claimed by G&A, regardless of how unreasonable the amount may be and then, at some later date, MSA can try to recoup any such unreasonable fees paid from either G&A or 360Heros. Unsurprisingly, G&A fails to provide any authority supporting its request and the Court was unable to find any. Rather, in a somewhat similar case, the court rejected the requested injunctive relief.

In *Stuckey v. National Union Fire Ins. Co. of Pittsburgh*, 131 F. Supp. 3d 73 (S.D.N.Y. 2015), the plaintiff, who was formerly employed as a dean at a university, brought suit against a liability insurer, seeking a preliminary injunction forcing insurer to reimburse his past defense

costs incurred in an underlying sexual harassment action, which was brought by one of the plaintiff's subordinates against the plaintiff and the university, and to authorize and indemnify settlement between the plaintiff and the plaintiff's subordinate in underlying action. *See id.* In denying the motion for injunctive relief, the court noted that, at the time the plaintiff filed his motion, the defendant had not reimbursed him for any defense costs or even acknowledged that he was even entitled to defense costs under the policy. *See id.* at 83. However, once the defendant reimbursed the plaintiff "for what it considers 'reasonable' costs, and has indicated that it will continue to do so in the future," the plaintiff's remaining argument is that "he needs injunctive relief to get the full amount he has paid and is paying his presently-retained counsel." *Id.* at 83-84. The court held that no injunctive relief was warranted because "any harm Plaintiff suffers from not receiving an amount above what [the defendant] has already reimbursed him is compensable in money damages." *Id.* at 84 (citation omitted).

As in *Stuckey*, any harm to 360Heros is compensable in money damages. As such, 360Heros has failed to establish that it will suffer irreparable harm. *See Stuckey*, 131 F. Supp. 3d at 84-85.

Additionally, the Court finds that 360Heros has failed to demonstrate that it is likely to succeed on the merits in this action. The weight of authority provides that the duty to defend extends only to reasonable fees and costs. *See ACP Servs. Corp. v. St. Paul Fire & Marine Ins. Co.*, 224 A.D.2d 961, 962 (4th Dep't 1996) (citation omitted); *1010 Tenants Corp. v. Atl. Mut. Ins. Co.*, 146 A.D.2d 471, 471 (1st Dep't 1989); *Emhart Indus., Inc. v. Home Ins. Co.*, 515 F. Supp. 2d 228, 250-52 (D.R.I. 2007); *Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach*, No. 95 Civ. 3722, 1996 WL 520902, *7-*8 (S.D.N.Y. Sept. 12, 1996); *Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. 458, 461 (W.D. Mich. 1993); *Emons Indus., Inc. v. Liberty Mut.*

*Ins. Co.*, 747 F. Supp. 1079, 1084 (S.D.N.Y. 1990). Moreover, courts are generally reluctant to permit recovery of more than reasonable costs, with good reason: lawyers are ethically bound to charge only reasonable fees to their clients. *See* American Bar Association Model Rule of Professional Conduct 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses"). Furthermore, some courts have recognized that even when an insurance policy does not expressly limit an insured's recovery to "reasonable" defense costs, such a limitation arises by implication because "without such an understood qualification of reasonableness, insurers would be at the mercy of their insured's attorneys." *Macmillan, Inc. v. Fed. Ins. Co.*, 141 F.R.D. 241, 243-44 (S.D.N.Y. 1992). As noted in *Liberty Mutual Insurance Co. v. Continental Casualty Co.*, 771 F.2d 579, 582 (1st Cir. 1985), permitting recovery of all fees and costs rather than reasonable ones "would be to invite excessive, duplicative, or outrageous charges — charges which were not originally contemplated by the parties to the policy and which, if allowed, might ultimately lead to increased premiums for many purchasers of insurance." *Id.*; *see also Ceres Environmental Serv., Inc. v. Arch Specialty Ins. Co.*, 853 F. Supp. 2d 859, 863-65 (D. Minn. 2012) (applying New York law and declining to award the insured its full costs in defending an underlying action where a court had previously determined that the amount requested was unreasonable).

Additionally, in its reservation of rights letter, MSA specifically stated that it agreed to pay "reasonable and necessary attorney's fees[.]" Dkt. No. 2-10 at 7. Although G&A asserts that the fees it has charged and the hours it has expended are reasonable and necessary, the Court has no way of assessing this claim because none of the disputed charges are before the Court. *See* Dkt. No. 42 at 3 (indicating that none of the correspondence related to the disputed fees is "included here as it addresses facts and legal analysis which cannot be publically disclosed").

Without having the benefit of reviewing the disputed invoice entries, it is impossible for the Court to determine whether 360Heros will likely ultimately succeed in this case. *See Stuckey*, 131 F. Supp. 3d at 85.

Based on the foregoing, the Court denies 360Heros' motion for a preliminary injunction.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that 360Heros' motion for a preliminary injunction (Dkt. Nos. 2 & 42) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 21, 2018
      Albany, New York

Mae A. D'Agostino
U.S. District Judge