**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**360HEROS, INC.,** *a Delaware Corporation*,

                                               **Plaintiff,**

          **vs.**

                                                                    **5:17-CV-549**
                                                                    **(MAD/ML)**

**MAINSTREET AMERICA ASSURANCE**
**COMPANY,** *a Florida Corporation*,

                                               **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**GAUNTLETT & ASSOCIATES**              **DAVID A. GAUNTLETT, ESQ.**
18400 Von Karman Avenue, Suite 300     **JAMES A. LOWE, ESQ.**
Irvine, California 92612
Attorneys for Plaintiff

**KENNEY SHELTON LIPTAK NOWAK LLP**     **MELISSA A. FOTI, ESQ.**
233 Franklin Street                    **MATTHEW C. RONAN, ESQ.**
Buffalo, New York 14202
Attorneys for Defendant

**DELAHUNT LAW PLLC**                   **TIMOTHY E. DELAHUNT, ESQ.**
295 Main Street, Suite 836
Buffalo, New York 14203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

This declaratory judgment action arises out of an underlying action in which Defendant Main Street America Assurance Company's ("MSA") insured, Plaintiff 360Heros, Inc. ("360Heros") was sued by GoPro, Inc. ("GoPro") for patent and trademark infringement (hereinafter the "GoPro action").  Defendant agreed to defend Plaintiff in the underlying GoPro action and continued to do so after this action was commenced.  On May 17, 2018, the underlying GoPro action was settled.

In the present matter, the only remaining dispute concerns the reasonableness of attorneys' fees and expenses billed to Defendant by Plaintiff's defense counsel, Gauntlett & Associates ("Gauntlett"), in the GoPro action.  Currently before the Court are the parties' cross motions for summary judgment.  See Dkt. Nos. 94 & 96.  As set forth below, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

## II. BACKGROUND

The Court assumes the parties' familiarity with the background of this case, as detailed in the August 7, 2019 Memorandum-Decision and Order.  *See* Dkt. No. 77.

## III. DISCUSSION

### A.    Plaintiff's Motion to Strike

While Plaintiff has not formally made a motion to strike, Plaintiff objects to Defendant's use of the declarations of Kenneth Keller, Matthew Ronan, and Brian Brennan to support its claims that the hours and expenses billed by Plaintiff's Counsel, Gauntlett & Associates, (hereinafter "Gauntlett") were unreasonable.  Dkt. No. 98 at 10-11 (citing Dkt. Nos. 96-1; 96-12; 96-16).  Plaintiff asserts that none of these individuals have been qualified as an expert in the field

of accounting and their declarations are inappropriate lay testimony.  *Id.*  Plaintiff raised these issues in its reply to Defendant's opposition to Plaintiff's motion for summary judgment.  *Id.*  Therefore, the Court is without a response from Defendant on this issue.

"Because 'a decision on the motion to strike may affect [the movant's] ability to prevail on summary judgment,' it is appropriate to consider a motion to strike prior to a motion for summary judgment."  *Pugliese v. Verizon New York, Inc.*, No. 05-CV-4005, 2008 WL 2882092, *5 (S.D.N.Y. July 9, 2008) (quoting *Gucci Am., Inc. v. Ashley Reed Trading, Inc.*, No. 00-CV-6041, 2003 WL 22327162, *2 (S.D.N.Y. Oct. 10, 2003)).

"Documents permitted for consideration by the Court on a motion for summary judgment 'must be authenticated by and attached to an [affidavit] that meets the requirements of [Rule] 56(e) and the [affiant] must be a person through whom the exhibits could be admitted into evidence.'"  *Silman v. Utica Coll.*, No. 6:14-cv-432, 2016 WL 4275721, *5 (N.D.N.Y. Aug. 12, 2016) (quoting *Blain's Helicopter, Inc.*, 831 F.2d at 925).  However, "[a]s a rule, courts do not strike portions of summary judgment exhibits."  *Garcia v. Law Offices of Howard Lee Schiff, P.C.*, No. 3:16-cv-791, 2018 WL 6590356, *3 (D. Conn. Dec. 14, 2018) (citing *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 231 (D. Conn. 2008) ("In the context of summary judgment, motions to strike are unnecessary and produce only redundant statements by the court that it has not relied on such inadmissible evidence in deciding the summary judgment motion")).  "Motions to strike at the summary judgment stage can underscore that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts

the affiant's previous deposition testimony.'" *Id.* (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999)).

Motions to strike "are generally considered redundant and inappropriate by this Circuit's courts." *Id.* (citing *Wanamaker v. Town of Westport Bd. of Educ.*, No. 3:11CV1791, 2013 WL 3816592, *2 (D. Conn. July 22, 2013) (collecting cases on the inappropriateness of motions to strike summary judgment exhibits)). "Rather, '[t]he parties to an action should have faith . . . that the court knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving *ipse dixit* of a particular party.'" *Id.* (quoting *Carone v. Mascolo*, 573 F. Supp. 2d 575, 580 (D. Conn. 2008)).

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

Rule 56(e) provides three specific options if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e). However,

Rule 56(e) also gives the court discretion to "issue any other appropriate order." Fed. R. Civ. P. 56(e)(4).

Finally, Federal Rule of Civil Procedure 56(c)(4) requires that an affidavit or declaration submitted in connection with a summary judgment motion "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[U]ltimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary judgment motion." *BellSouth TelecomChitrah, Inc. v. W.R. Grace & Co.—Conn*., 77 F.3d 603, 615 (2d Cir. 1996) (alterations in original); *see also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2738, at 346-56 (1998). "When an affidavit does not comply with these basic requirements, the offending portions should be disregarded by the court." *Wahad v. F.B.I*., 179 F.R.D. 429, 435 (S.D.N.Y. 1998) (citing *United States v. Alessi*, 599 F.2d 513, 514-15 (2d Cir. 1979)).

### 1. Kenneth Keller

Plaintiff objects to Defendant's use of Mr. Keller's declaration because Plaintiff claims he has not properly supported his intellectual property experience and is not an accountant. *Id*. (citing Dkt. No. 96-16). Following Plaintiff's bald, three sentence assertion that Mr. Keller's report is inadmissible, Plaintiff directs the Court to the *Daubert* standard with no analysis. *Id*. However, Plaintiff's reliance on *Daubert* is misplaced.

Foremost, it does not appear that Mr. Keller's affidavit has been offered as an expert opinion. *See* Dkt. No. 96-16. Rather, the affidavit was submitted to support facts related to his

auditing of Gauntlett's invoices on behalf of Defendant.  *See id*.  Further, Mr. Keller's affidavit appears to have been submitted to authenticate the letters he drafted to Gauntlett indicating what fees and expenses he found unreasonable based on his experience and therefore advised Defendant not to pay.  The affidavit demonstrates that the letters were "made on personal knowledge, set out facts that would be admissible in evidence, and show that the [Mr. Keller] is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

There does not appear to be any expert opinion from Mr. Keller before the Court.  Rather, Mr. Keller's affidavit simply lays foundation for his work as an auditor.  Dkt. No. 96-16 at ¶¶4-6.  While Mr. Keller would inevitably have to discuss the reasonableness of the fees and expenses if he were to testify at trial, "[t]he fact that the lay opinion testimony bears on the ultimate issue in the case does not render it inadmissible."  *Helena Assocs., LLC v. EFCO Corp*., No. 06 CIV. 0861, 2008 WL 2117621, *5 (S.D.N.Y. May 14, 2008) (quoting *B & G Plastics, Inc. v. E. Creative Indus., Inc*., No. 98CIV.0884, 2004 WL 307276, *8 (S.D.N.Y. Feb. 18, 2004)).

Regardless, for purposes of summary judgment, there is no expert opinion before the Court.  Plaintiff does not assert that the letters attached to his affidavit are inadmissible, only that Mr. Keller has failed to support his assertion that he has experience participating in intellectual property cases and therefore cannot testify as an expert.[1]  *See* Dkt. No. 98 at 10-11.

---

[1] The Court directs Plaintiff to Defendant's very next submission, which is Mr. Keller's curriculum vitae (hereinafter "CV").  Dkt. No. 96-17.  Mr. Keller's CV explains that he obtained his juris doctorate from University of California, Berkley in 1976 after first obtaining a Bachelor's of Science Degree in Zoology.  *Id*. at 5.  Since graduating, Mr. Keller has tried more than 80 cases to verdict in federal and state courts throughout the United States.  *Id*. at 2.  For over 40 years, Mr. Keller has represented clients in intellectual property cases and has served as an expert witness in fee disputes arising out of intellectual property litigation.  *Id*.  Mr. Keller's CV goes on to list multiple cases that he represented clients in and the various courts he is admitted to practice in.

Based on the submissions currently before the Court, Mr. Keller's affidavit is admissible for the proffered purpose.[2]  Plaintiff's motion to strike Mr. Keller's affidavit is therefore denied.

### 2. Matthew Ronan

Matthew Ronan is an associate at Kenney Shelton Liptak Nowak and represents Defendant.  Dkt. No. 96-16 at ¶ 1.  Mr. Ronan submitted an affidavit in support of Defendant's motion for summary judgment.  *Id.*  Plaintiff asserts that Mr. Ronan's affidavit is inadmissible because he is not qualified as an expert.  Dkt. No. 98 at 11.

Foremost, Plaintiff's repeated arguments that all of Defendant's affidavits must have been submitted by qualified experts demonstrates a profound misunderstanding of federal court motion practice.[3]  All motions for summary judgment must be accompanied by a statement of material facts and an affidavit providing foundation for those facts.  *See* Fed. R. Civ. P. 56(c).  The affidavit need only be made based on "personal knowledge, set out facts that would be admissible

---

*Id.* at 3-4.  Finally, Mr. Keller's CV lists the various awards and professional highlights he has received, including being elected to the American Board of Trial Advocates and being names as a Super Lawyer in Intellectual Property Litigation since the inception of California Super Lawyers. *Id.* at 4.

[2] The irony of Plaintiff's argument regarding the admissibility of these affidavits is not missed by the Court.  Specifically, Plaintiff contends that Defendant "has submitted testimony from only three declarants, none of whom are qualified to opine on the reasonableness of defense charges in the GoPro suit." Dkt. No. 98 at 10.  However, in support of its motion for summary judgment, Plaintiff specifically relies on the declarations from the attorneys involved in this matter in support of its position that the hours spent on the *GoPro* action by Gauntlett attorneys were reasonable.  For example, in the declaration of James A. Lowe, a partner at Gauntlett, Mr. Lowe repeatedly offers his opinion as to the reasonableness of the hours expended.  *See* Dkt. No. 94-2. It is entirely unclear why Plaintiff believes that it is appropriate for it to submit attorney affidavits/declarations offering opinions in support of its motion, while at the same time insisting that it was improper for Defendant to do so.

[3] The Court notes that Plaintiff is not *pro se* and is represented by counsel with significant litigation experience.  *See* Dkt. No. 94-1 at 7.

in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id*. at 56(c)(4).  Further, "lay witnesses [are permitted] to testify under Rule 701 [as] to their opinions when those opinions are based on a combination of their personal observations of the incident in question and background information they acquired through earlier personal observations."  *B & G Plastics, Inc.*, 2004 WL 307276, at *8 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995)).  Thus, all facts do not need to be attested to by an expert.

"Additionally, it is 'well established that an attorney's affidavit can be used, in connection with a summary judgment motion, to place documents produced in discovery before the Court.'" *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) (quoting *Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L.*, No. 05-CV-2851, 2008 WL 905892, *27 (E.D.N.Y. Mar. 31, 2008)).  A Court will not strike an attorney affidavit where, "the Court is capable of discerning from that affirmation what statements were made on the basis of [counsel's] firsthand knowledge; what statements are summaries of evidence in the record; and what documents the Court should review in determining the accuracy of those summaries."  *Id*.

A Court may strike portions of an attorney affidavit where those portions go "beyond the introduction of documents and veers into legal argument and factual allegations for which counsel has no personal knowledge."  *Fed. Trade Comm'n v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017).  "However, although such improper portions of the document should not be considered, striking a declaration from the record is at the court's discretion."  *Id*. (citing *Hollander v. American Cyanamid Co*., 172 F.3d 192, 198 (2d Cir. 1999)).

Plaintiff does not assert that Mr. Ronan lacks personal knowledge or that the statements veer into legal argument.  Rather, Plaintiff asserts that Mr. Ronan's affidavit incudes inflammatory opinions.  Dkt. No. 98 at 11.  Plaintiff, however, fails to cite to any particular passage in Mr. Ronan's declaration, and instead cites to the entire document.  Having reviewed the affidavit, the Court finds that there is nothing "inflammatory" about the statements made by Mr. Ronan.  Rather, Mr. Ronan simply makes arguments based on the facts in this case regarding charges that he believes are unreasonable (and, many of them were unreasonable).

### 3. Brian Brennan

Plaintiff objects to the use of Brian Brennan's affidavit because it "only authenticates documents but does not offer opinions about defense charges."  Dkt. No. 98 at 11 (citing Dkt. No. 92-12).  As the Court has already explained, this is the purpose of an accompanying affidavit. Thus, Plaintiff's motion to strike Mr. Brennan's affidavit is denied.[4]

### B.      Motion for Summary Judgment

### 1. Standard of Review

A court may grant a motion for summary judgment only if it determines that there are no genuine issues of material fact to be tried and that the movant is entitled to judgment as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other

---

[4] To the extent Plaintiff takes issue with the Court's use of the term affidavit rather than declaration, the Court highlights to Plaintiff that Rule 56 of the Federal Rules of Civil Procedure uses both terms and, for the present issues, there are no factors distinguishing the two terms.

citation omitted).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *Id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

### 2. *Defendant's Entitlement to Assert Recoupment as a Defense*

Plaintiff asserts that Defendant's unilateral application of a balance to its account amounts to an improper recoupment of expenses paid.  Dkt. No. 98 at 21-23.  Defendant asserts that because it never agreed that the fees were reasonable, the application of the credit was appropriate and not recoupment.  Dkt. No. 96-40 at 10.

### a. *Recoupment as a Defense*

The current dispute concerns thirty-seven invoices billed to Defendant by Gauntlett in the *GoPro* action.[5]  *See* Dkt. Nos. 95-5–95-31.  Defendant initially paid Invoices 1-11 in full.  Dkt. No. 96-39 at 2; Dkt. No. 96-15.  However, in November 2017, Defendant retained Attorney Kenneth Keller to audit invoices Defendant received from Gauntlett.  Dkt. No. 96-40 at 17.  Mr. Keller retroactively reviewed Invoices 12-17 and contemporaneously reviewed Invoices 18-37. *Id*. at 9.  Feeling that it had overpaid on invoices 12-17, Defendant stopped paying invoices it received after May 2018.  *Id*. at 9-10.  In total Defendant has paid $2,265,170.32 and Plaintiff seeks an additional $256,228.37.  Dkt. No. 94-1 at 25; Dkt. No. 95-31 at 1.

Plaintiff asserts that Defendant's failure to continue paying Gauntlett's invoices and its unilateral application of a credit amounts to recoupment and therefore violates the terms of

---

[5] Plaintiff also seeks fees for bringing this action.  *See* Dkt. No. 98 at 24-25.

Plaintiff's insurance policy. Dkt. No. 98 at 21-23. Neither party has presented the Court with a recoupment clause in the policy or evidence that one was ever discussed during the bargaining process. However, this is immaterial as Defendant is not asserting recoupment as a counterclaim.

Foremost, under New York law, there appears to be two types of recoupment, recoupment as counterclaims and as a defense. In a counterclaim for recoupment, there is a cross demand by the defendant for affirmative relief. *See In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997) (quoting *National Cash Register Co. v. Joseph*, 299 N.Y. 200, 203 (1949)). As defined by New York state law, "[r]ecoupment means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered." *Id*. (quoting *National Cash Register*, 299 N.Y. at 203). "Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Id*. (quoting *National Cash Register*, 299 N.Y. at 203).

However, where a defendant denies the validity of a plaintiff's claim in the amount claimed, that is recoupment asserted as a defense. *Enrico & Sons Contracting, Inc. v. Bridgemarket Assocs*., 252 A.D.2d 429, 430 (1st Dep't 1998) (citing *Rothschild v. Industrial Test Equipment Co*., 203 A.D.2d 271 (2d Dep't 1994)). "'Recoupment is an equitable doctrine similar to the older 'failure of consideration' doctrine, which looks to the whole contract, and the things to be done and/or stipulated to be done on both sides." *Id*. (quoting *Peuser v. Marsh*, 167 A.D. 604, 608 (3d Dep't 1915)). "It is really a defense, as it denies the validity of plaintiff's claim in the

amount claimed, and does not entitle defendants to any affirmative relief or any amounts in excess of the amount demanded by plaintiff." *Id.* at 430 (citing *Rothschild*, 203 A.D.2d at 271).

Plaintiff asserts that Defendant is claiming a setoff when in actuality, Defendant seeks a recoupment. Dkt. No. 98 at 23. In form and substance Defendant is seeking a recoupment as it is asking the Court to deny the validity of Plaintiff's claim, in the amount claimed, due to a debt arising out of the same transaction. *See In re McMahon*, 129 F.3d at 96 (explaining that a recoupment arises out of a dispute for the same transaction whereas a setoff concerns separate transactions). However, Defendant is not pursuing affirmative relief[6] and is instead only seeking to "offset any award of legal fees to the plaintiff." *Balanoff v. Doscher*, 140 A.D.3d 995, 996 (2d Dep't 2016). Therefore, Defendant properly only seeks recoupment as a defense.

### b. Recoupment is Not Barred

Relying on *Gen. Star Indem.*, Plaintiff asserts that recoupment claims by an insurer against the insured are barred. Dkt. No. 98 at 23. Recoupment asserted as an affirmative claim for the

---

[6] It is evident that Defendant does not seek affirmative relief because, foremost, it has not filed a counterclaim for recoupment. Second, Defendant has not requested any damages. Finally, upon the issuance of this opinion, Plaintiff's obligations to Gauntlett dissolve with Defendant's and therefore Plaintiff will not be inadvertently paying for the recoupment. That is because, here, Plaintiff has established standing based on the principle that it could enforce its contractual rights to have Defendant pay Gauntlett all reasonable fees and expenses from the *GoPro* action as Defendant is required to do. Dkt. No. 81 at 9. The damages Plaintiff seeks is the money it claims it will be liable to Gauntlett should Defendant fail to pay on the theory that Plaintiff will become responsible for those fees. However, following a determination as to the reasonableness of the fees, Defendant will be adjudged as having been paid all reasonable fees and expenses leaving only unreasonable fees and expenses unpaid. Gauntlett is precluded from seeking payment for all unreasonable fees. *See Citicorp Tr. Bank, FSB v. Vidaurre*, 155 A.D.3d 934, 935 (2d Dep't 2017) ("An award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered"). Therefore, Gauntlett will have been paid the full amount it is entitled to upon conclusion of this action and there will be nothing left for Plaintiff to pay.

costs paid while representing an insured in an underlying litigation is typically awarded in only a few instances. *Gen. Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 459 (E.D.N.Y. 2015). Where courts have awarded recoupment, the right was reserved by the insurer or that right was unopposed by the insured. *Id.* (citations omitted). Recoupment is not appropriate where the insured "effectively resisted the idea of recoupment from the very beginning by rejecting [the insurer's] offer of a separate recoupment agreement." *Id.* Under such circumstances, the court would be effectively adding a recoupment clause to the contract despite the fact that the parties already elected to proceed without one. *Id.* at 462.

However, recoupment need not be pled as a counterclaim. *See In re McMahon*, 129 F.3d at 96 (citing *Constantino v. State*, 99 Misc. 2d 362, 365 (N.Y. Ct. Cl. 1979)). Recoupment as a defense is appropriate where the party only seeks to introduce the claim to "offset any award of legal fees to the plaintiff and not to . . . seek[] affirmative relief." *Balanoff*, 140 A.D.3d at 996. In essence, "recoupment claim goes to the heart of the parties' bargain." *Enrico & Sons Contracting*, 252 A.D.2d at 430 (citing *Peuser*, 167 App. Div. at 608).

Plaintiff does not raise any arguments as to whether Defendant's claim for recoupment is procedurally improper, only that it is not permissible under the insurance policy language. *See* Dkt. No. 98 at 21-23. However, Defendant only seeks to introduce the claim to "offset any award of legal fees to the plaintiff and not to . . . seek[] affirmative relief." *Balanoff*, 140 A.D.3d at 996.

As such, Plaintiff's reliance on *Gen. Star Indem.* is misplaced as that case delt with a counterclaim by the insurer against the insured.  *Gen. Star Indem.*, 80 F. Supp. 3d at 459. [7]

Therefore, Defendant's attempt to recoup its amounts paid on Invoices 1-17 is not improper as it does not attempt to seek any payment from Plaintiff and by also paying Gauntlett all reasonable fees and expenses incurred, it does not breach its agreement with Plaintiff.

### 3. Plaintiff is Only Entitled to Payment of Reasonable Attorneys' Fees

Despite Plaintiff's significant briefing in its motion for summary judgment and its reply to Defendant's opposition, the parties do not dispute that Plaintiff was entitled to coverage for its defense in the *GoPro* action as well as bringing its compulsory counterclaim.  Dkt. No. 94 at 10-13, 19-21; Dkt. No. 96-39 at 3.  Contrary to Plaintiff's assertions, Gauntlett may only charge a reasonable fee and, as Plaintiff is seeking to recover the amount Gauntlett is entitled to, Plaintiff's damages are capped at those reasonable fees and expenses billed by Gauntlett.

Although the duty to defend is broad, it is well settled that the duty only extends to payment of reasonable fees and costs.  *See, e.g.*, *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 401 (1981) (holding that "[the defendant] is entitled to defense by an attorney of his own choosing, whose reasonable fee is to be paid by the insurer").  As this Court stated in its February 21, 2018 Memorandum-Decision and Order, "courts are generally reluctant to permit recovery of more than reasonable costs, with good reason: lawyers are ethically bound to charge only reasonable fees to their clients."  *See* Dkt. No. 43 at 15 (citing American Bar Association Model

---

[7] Additionally, the Court notes the amount of unpaid fees Plaintiff seeks is lower than the amount of fees the Court determined to be unreasonable.  Therefore, even if the Court did not allow Defendant to plead recoupment as a defense, Plaintiff would not be entitled to any damages.

Rule of Professional Conduct 1.5(a)). Thus, even when an insurance policy does not expressly limit an insured's recovery to "reasonable" defense costs, some courts have found that such a limitation is implied because "[w]ithout such an understood qualification of reasonableness, insurers would be at the mercy of their insured's attorneys." *Macmillan, Inc. v. Fed. Ins. Co.*, 141 F.R.D. 241, 243-44 (S.D.N.Y. 1992); *see also Liberty Mut. Ins. Co. v. Cont'l Cas. Co.*, 771 F.2d 579, 582 (1st Cir. 1985) (noting that eliminating the reasonableness requirement "would be to invite excessive, duplicative, or outrageous charges").

Further, the policy is limited to damages that Plaintiff would "become[] legally obligated to pay." Dkt. No. 1-1 at 53. Gauntlett is barred from charging unreasonable fees and as such, Plaintiff is not liable for any amount of unreasonable fees which the Court determines Defendant rightfully refused to pay. *See Citicorp Tr. Bank*, 155 A.D.3d at 935 ("An award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered"). Thus, as Defendant is only obligated to pay damages that Plaintiff would "become[] legally obligated to pay," Defendant was not required to pay any unreasonable fees charged by Gauntlett.

### 4. Unreasonable Attorneys' Fees and Expenses

The only issue before the Court regarding the reasonableness of the fees and expenses is what, if any, portion of those billed were excessive or unreasonable. *See* Dkt. No. 96-39 at 3. Defendant asserts that based on Gauntlett's repeated examples of unreasonable and excessive billing, the Court should reduce Gauntlett's attorneys' fees and expenses by twenty to thirty

percent across the board.  Dkt. No. 96-39 at 11.  The Court agrees that an across the board reduction is appropriate, but only at fifteen percent.

"Where . . . an insured is forced to defend an action because the insurer wrongfully refused to provide a defense, the insured is entitled to recover its reasonable defense costs, including attorneys' fees." *Danaher Corp. v. Travelers Indem. Co*., No. 10cv0121, 2015 WL 409525, *2 (S.D.N.Y. Jan. 16, 2015) (quoting *U.S. Underwriters Insurance Co. v. Weatherization, Inc.*, 21 F. Supp. 2d 318, 326 (S.D.N.Y. 1998)).  "The fee applicant must 'adequately document [ ] the request' so that the court can fulfill its 'duty to determine the reasonableness of the amount.'"  *Id*. (quoting *U.S. Underwriters Insurance*, 21 F. Supp. 2d at 326).  "The award should be based on the court's determination of a 'presumptively reasonable fee.'"  *Id*. (quoting *Sandoval v. Materia Bros. Inc*., No. 11 Civ. 4250, 2013 WL 1767748, *3 (S.D.N.Y. Mar. 5, 2013)).

Although the duty to defend is broad, it is well settled that the duty only extends to payment of reasonable fees and costs.  *See, e.g.*, *Pub. Serv. Mut. Ins.*, 53 N.Y.2d at 401.  Thus, the district court "should exclude . . . hours that were not 'reasonably expended,'" including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted).  "In excluding hours that were not reasonably expended, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'"  *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 28 (N.D.N.Y. 2015) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)); *Rubar*, 306 F. Supp. 3d at 489 (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)); *see also Danaher*, 2015 WL 409525, at *2

(stating that where the insurer wrongfully refused to provide a defense, the court must exclude

excessive, redundant or otherwise unnecessary hours and may do so by "making specific

deductions or 'by making an across-the-board reduction in the amount of hours'") (citation

omitted).

The Court notes, foremost, that the parties dispute the unpaid amount of fees and

expenses.  Plaintiff asserts that there remains $256,228.37 in unpaid attorneys' fees and expenses

with prejudgment interest and a per diem amount of prejudgment interest of $63.18.  Dkt. No. 94-

4 at ¶ 47.[8]  Defendant asserts that the unpaid balance is determined by examining the total

amounts billed to Defendant and subtracting the total payment, resulting in an actual unpaid

balance of $180,923.21.  Dkt. No. 96-40 at 15.  The totals asserted are both incorrect.  As of July

1, 2019, Defendant had paid Plaintiff $2,265,170.  Dkt. No. 95-31 at 1.  Similarly, as of July 1,

---

[8] Plaintiff came to its calculation by excluding payments on Invoices 1-11 and including finance charges Gauntlett billed to Defendant.  *See* Dkt. No. 95-73.  Plaintiff's calculation also fails to include payments that were recorded on Invoices 12 and 13.  Dkt. No. 95-73.  It is unclear how Gauntlett apportioned payments which further supports viewing the contract as a whole rather than as individual invoices.  Additionally, on July 1, 2019, Gauntlett reported that it had billed $40,369.52 in total finance charges.  Dkt. No. 95-31 at 1.  However, the Court is only able to calculate $40,277.58 in finance charges.  The differences between the two calculations is $91.94.  The Court also notes that on September 20, 2017, Gauntlett recorded the total finance charges as $7,788.80 on Invoice No. 14.  Dkt. No. 95-8 at 64.  However, on October 16, 2017, Gauntlett recorded the total finance charges as $7,880.74 on Invoice No. 15 despite not billing any additional finance charges.  Dkt. No. 95-9 at 39.  The difference between the two is $91.94.  At no point else in the billing records does the finance charge increase without an additional bill for the amount.  Plaintiff does not explain how or why the additional $91.94 was added to the account.  It appears that Defendant's calculations include finance charges.  Both parties agree that Plaintiff would be entitled to a nine percent interest rate if it were entitled to damages.  *See* Dkt. No. 96-39 at 3.  However, as explained below, Plaintiff is not entitled to any damages and therefore this issue is moot.

2019, Gauntlett had billed Defendant $2,437,971.00 not including finance charges.[9]  *Id*.  Thus, the total of unpaid attorneys' fees and expenses is $172,800.68.

Regardless, the Court finds that the amount of unpaid fees is significantly less than the amount that the Court finds were reasonably expended.  Gauntlett's invoices are replete with excessive and inappropriate billing warranting a fifteen percent reduction, or $365,695.65.

Gauntlett's first eleven invoices were billed without any tasks designated to a paralegal.  *See* Dkt. No. 95-5.  Plaintiff claims that this was because Gauntlett had work performed by individuals not qualified as paralegals and therefore they did not bill Defendant for their time.[10]  Dkt. No. 98 at 16.  Therefore, Gauntlett felt the use of law clerks for more administrative tasks was more appropriate, which they bill at $150 per hour.  Dkt. No. 98 at 16.  Despite Plaintiff's assertions, many invoices did not even include work billed by law clerks and only billed at associate and partner rates.  *See* Dkt. No. 95-5 at 7, 12, 70, 124, 274.

Further, Gauntlett repeatedly billed for administrative work at partner rates.  For example, Mr. Lowe routinely billed at a partner rate for arranging meetings, drafting correspondences to the

---

[9] A full calculation of fees and costs was calculated by adding the total of "Current Work" on Invoices 1-37.  *See* Dkt. No. 95-5 at 7, 13, 27, 47, 71, 100, 124, 198, 249, 274, 301; Dkt. No. 95-6 at 26; Dkt. No. 95-7 at 37-38; Dkt. No. 95-8 at 63-64; Dkt. No. 95-9 at 39; Dkt. No. 95-10 at 50; Dkt. No. 95-11 at 44-45; Dkt. No. 95-12 at 29-30; Dkt. No. 95-13 at 46; Dkt. No. 95-14 at 46-47; 95-15 at 54; Dkt. No. 95-16 at 80; Dkt. No. 95-17 at 42; Dkt. No. 95-18 at 17; Dkt. No. 95-19 at 5; Dkt. No. 95-20 at 4; Dkt. No. 95-21 at 2; Dkt. No. 95-22 at 2; Dkt. No. 95-23 at 1; Dkt. No. 95-24 at 2; Dkt. No. 95-25 at 1-2; Dkt. No. 95-26 at 1; Dkt. No. 95-27 at 1-2; Dkt. No. 95-28 at 1-2; 95-29 at 1-2; Dkt. No. 95-30 at 1; Dkt. No. 95-31 at 1.  It is also equal to the total fees, hours, expenses, and advances in the billing history listed at the bottom of Invoice 37.  Dkt. No. 95-31 at 1. A total of Defendant's payments was similarly confirmed by calculating the sum total of all payments in Invoices 1-37.
[10] Plaintiff has not provided any evidence that these non-qualified paralegals actually did any work on its case and that those hours were comped by Gauntlett.

clients, and other communications.  Dkt. No. 95-5 at 3, 5, 10, 11, 12, 14, 15.  Mr. Lowe spent 1.1

hours—billing $385—calling an expert for their tax ID number.  Dkt. No. 95-14 at 5.  Ms.

Tomassian, an associate, routinely billed for organizing and compiling documents.  Dkt. No. 95-5

at 10.  These are but a couple of examples in the almost one thousand pages of invoices.

Gauntlett also billed at full rates for travel, which should have been billed at half of their

hourly rates.  *See Etna Prod. Co. v. Q Mktg. Grp., Ltd*., No. 03 CIV. 3805, 2005 WL 2254465, *6

(S.D.N.Y. June 6, 2005).  For example, Gauntlett billed over $22,000 on Invoices 16 and 17 alone

for travel.  Dkt. No. 95-10 at 22, 49-50; Dkt. No. 95-12 at 8, 24, 28-29.  For travel to a one day

out-of-town settlement conference, Mr. Lowe billed for $418.48 in meals.  Dkt. No. 95-13 at 45.

Mr. Lowe also billed $28 for "other" with no description.  *Id*.

Gauntlett repeatedly billed for time spent disputing the reasonableness of its fees.  For

example, on Invoice 19, Gauntlett billed over $3,000 for over ten hours spent addressing its fee

disputes with Defendant.  Dkt. No. 95-13 at 4-5, 20, 41-42.  On Invoice 20, Gauntlett billed two

hours and charged $770 for addressing its fee disputes with Defendant.  Dkt. No. 95-14 at 21, 25,

43.  Such charges are inappropriate.  *In re St. Rita's Assocs. Priv. Placement, L.P*., 260 B.R. 650,

652 (Bankr. W.D.N.Y. 2001) ("[W]hen clients refuse to pay a disputed bill, attorneys must choose

either to 'write-off' the liability or to commence litigation for collection"); *see also PaySys Int'l,*

*Inc. v. Atos Se*, No. 14CV10105, 2019 WL 2051812, *6 (S.D.N.Y. May 9, 2019).

Gauntlett also repeatedly billed for copying charges without any explanation.  Dkt. No.

95-13 at 45; Dkt. No. 95-14 at 46; Dkt. No. 95-15 at 53; Dkt. No. 95-18 at 16.  Such practices are

also inappropriate.  *See Mendez v. Radec Corp*., 907 F. Supp. 2d 353, 360 (W.D.N.Y. 2012)

(reducing the plaintiff's copying costs by sixty percent where "Plaintiffs' submissions [did] not indicate what each instance of copying relates to, or why it was necessary for the prosecution of this case"); *see also U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp*., 95 F.3d 153, 173 (2d Cir. 1996).

Finally, Gauntlett attorneys repeatedly billed an excessive number of hours.  For example, Mr. Lowe twice billed 1.3 hours for reviewing the court's minute entries to determine issues that would be discussed.  Dkt. No. 95-14 at 4, 11-12.  Mr. Schewe spent over thirty hours planning and preparing for a deposition of Ingrid Cotoros, over twenty-five hours of which were for drafting questions for the four-and-a-half-hour deposition.  Dkt. No. 95-12 at 15, 21-23, 25-26, 39-30, 32, 34, 35, 36, 37, 38.  Ms. Jin similarly billed over thirty-four hours for preparing for the deposition of Justin Wilkenfeld, including over twenty hours spent on document review and over nine hours drafting a memo regarding the deposition.  Dkt. No. 95-12 at 9, 23, 27, 31, 34, 37.

Perhaps one of the most egregious examples of excessive billing was for the deposition of Alex Jenny, which almost the entire thirty-eight-page invoice, Invoice 13, concerns.  *See* Dkt. No. 95-7.  A modest calculation of only the records in the first twenty-one pages shows over fifty hours billed for preparing for this deposition by Gauntlett.  *Id*. at 4-21.  Courts have held that spending even twenty hours preparing for a half-day deposition is excessive.  *Shannon v. Fireman's Fund Ins. Co*., 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001).  Gauntlett has clearly surpassed what has already been considered unreasonable.

In *Shannon*, the court held that a thirty-five percent reduction of counsel's hours was warranted based on the inefficiencies, duplication or excessive submissions.  *Shannon*, 156 F.

Supp. 2d at 301-02.  However, in *Shannon*, counsel's conduct was far less egregious than that

displayed here.  There, counsel spent twenty hours preparing for a deposition, had multiple entries

in which a partner was billing for administrative tasks, and included vague entries.  Here,

Gauntlett spent significantly more time preparing for depositions, had no paralegals working on

the case, and made it a practice of billing at partner rates for administrative tasks.

Similarly, in *Levy*, the court reduced the attorneys' fee award by twenty-five percent to

account for numerous claims that were ultimately withdrawn and for claims that were

unsuccessful at trial.  *Levy v. Powell*, No. CV-00-4499, 2005 WL 1719972, *12 (E.D.N.Y. July

22, 2005).  Here, Plaintiff's counsel repeatedly billed for motions that were not even submitted.

In Invoices 17 and 18 alone, Gauntlett billed over thirteen hours and almost $4,000 for a motion

to amend it apparently drafted but never filed.  Dkt. No. 95-11 at 42-43; Dkt. No. 95-12 at 1-3.

Finally, in *Luciano*, the Second Circuit affirmed the district courts reduction of counsel's

fees by fifteen percent for the "excessive time wasted in [the] litigation by uncooperative and

contentious behavior."  *Luciano v. Olsten Corp.*, 109 F.3d 111, 116-17 (2d Cir. 1997).  Gauntlett

billed for time related to mitigating damages associated with Gauntlett producing falsified

evidence in discovery, for which they were sanctioned, and then for what the court determined

was unnecessary motion practice caused by Gauntlett's failure to produce documents in discovery.

Dkt. No. 96-7 at 2-3 (Judge Illston of the Northern District of California describing Gauntlett's

conduct as "smacks of gamesmanship"); Dkt. No. 96-9 ("The Court is not persuaded by

defendant's explanation of the suspect document, and concludes on the present record that

defendant deliberately altered it in an effort to strengthen its legal position with respect the

ABYSS mark. . . . Accordingly, the Court finds that sanctions are warranted").  For example, on Invoice 21 alone, Gauntlett billed over thirty hours—over $8,000—regarding the sanction motion for the falsified emails.  Dkt. No. 95-15 at 21, 27, 30, 32, 37-38, 40-42, 44-47, 49-50.

Based on Gauntlett's repeated practice of billing excessive, redundant or otherwise unnecessary hours the Court finds that a fifteen percent reduction in Gauntlett's fees is warranted. A fifteen percent reduction amounts to $365,695.65, leaving $2,072,275.35 in reasonable fees and costs.[11]  Defendant has already paid $2,265,170.32 and has therefore satisfied its obligation to defend Plaintiff and its obligation to pay Gauntlett's reasonable attorneys' fees and costs. Plaintiff's motion for summary judgment is therefore denied and Defendant's motion for summary judgment is granted.  Similarly, Plaintiff's bad faith claim against Defendant for failing to defend is also denied as Defendant paid all reasonable costs.  *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, No. 06-CV-1117, 2010 WL 1257943, *8 n.8 (N.D.N.Y. Mar. 25, 2010) (finding that the plaintiff failed to allege a bad faith claim where the defendant reduced attorneys' fees by fifteen percent for unreasonableness but otherwise paid the plaintiff's costs).

### 4. Plaintiff's Bad Faith Claim

Plaintiff asserts that Defendant's previous motion for summary judgment was made in bad faith as the Second Circuit reversed the Court's decision granting Defendant's motion for summary judgment.  Dkt. No. 94-1 at 4-5.  As support, Plaintiff cites a deposition of Mr. Kitner that was taken after the Court's decision.  *Id*. (citing Dkt. No. 94-4 at ¶ 42).

---

[11] The Court notes that given that the vast majority of the inappropriate billing occurred on Invoices 12-37, the Court would still find a fifteen percent reduction appropriate even if only Invoices 12-37 were under review.  Such a decrease would result in a fee cut of $260,857.19, which is still more than Plaintiff claims it is entitled to in damages.  *See* Dkt. No. 95-73.

Not only was Defendant's motion successful at the district court level, the fact that the Second Circuit disagreed with Defendant's position does not demonstrate the argument was made in bad faith. *See Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075, 2016 WL 4718018, *5 (S.D.N.Y. Sept. 9, 2016) ("Although Mahan and Freeman were ultimately unable to convince the Second Circuit to render the relief requested in the cross-motion, nothing indicates that this filing was made in bad faith"). Plaintiff's claim that Defendant's previous motion for summary judgment was made in bad faith is therefore meritless and denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's Motion for Summary Judgment (Dkt. No. 94) is **DENIED**; and the Court further

**ORDERS** that Defendant's Motion for Summary Judgment (Dkt. No. 96) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 25, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge